UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 24-cr-248 |
| v. : | |
| : | |
| BARBARA BALMASEDA, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION**
**OF DEFENDANT'S MOTION TO TRAVEL**

Barbara Balmaseda unlawfully entered the U.S. Capitol on January 6, 2021 in the midst of a violent riot. The Government is not aware of evidence that Ms. Balmaseda assaulted officers, however, Ms. Balmaseda was in the first group of rioters to breach the U.S. Capitol building, she encountered multiple police lines trying to prevent her from continuing to enter the Capitol building, and she remained in the Capitol building for nearly an hour.

Primarily for these reasons, the Government agreed that Ms. Balmaseda may remain on release pending trial, without a curfew, home detention, or monitoring – but not without conditions. Here, the condition that Ms. Balmaseda surrender her passport and not obtain another passport or other international travel document are among the minimum conditions necessary to ensure the safety of the community and ensure Ms. Balmaseda's appearance at trial and other court proceedings. Ms. Balmaseda's involvement in the January 6, 2021, riot justify these restrictions. Accordingly, the Court should deny Ms. Balmaseda's motion to travel.

**RELEVANT FACTS**

Leading up to January 6, 2021, Ms. Balmaseda exchanged messages with Gabriel Garcia[1] and other members of the Proud Boys organization in which Ms. Balmaseda participated in

---

[1] *See United States v. Garcia*, 21-cr-129 (ABJ).

1

communications reflecting her belief that the 2020 Presidential Election had been stolen and her knowledge about the Certification process scheduled to take place on January 6, 2021. [ECF No. 1-1 at 8-9].

On January 6, 2021, Ms. Balmaseda approached the Capitol building with Mr. Garcia at around 2:00 p.m. [Id. at 12]. She was in position to see the crowd of rioters climbing the scaffolding on the west side of the Capitol building and plumes of smoke that billowed into the air. [Id.]. By this time, rioters had overwhelmed officers on the west front, bypassed the officer lines, and gained access to the northwest stairs of the Capitol. [Id.]. Around 2:09 p.m., rioters pushed past officers on the middle landing of the stairs and surged toward the Capitol building. [Id.].

Ms. Balmaseda was towards the front of the mob of rioters on the west front of the Capitol grounds. [Id. at 13]. Ms. Balmaseda then climbed on equipment that had been staged in preparation for the Presidential Inauguration to gain closer access to the Capitol building's northwest stairs. [Id.]. Ms. Balmaseda climbed on top of the concrete stairs and up the balustrade toward the Upper West Terrace of the Capitol building. [Id.].

Ms. Balmaseda entered the Capitol building with Mr. Garcia via the Senate Wing door at approximately 2:16 p.m., just four minutes after rioters initially breached the building. [Id. at 14]. When Ms. Balmaseda entered the building, broken glass was scattered on the ground, and an alarm blared near the doorway. [Id.]. After entering the Capitol building, Ms. Balmaseda went toward the Crypt and pushed her way to the front of a crowd of rioters who were confronting a police line. [Id. at 15]. While in the Crypt, Mr. Garcia recorded a video on his phone showing the chaos in the Crypt. [Id. at 16]. As Mr. Garcia began recording, the crowd was chanting "Our House!" Within seconds, Mr. Garcia turned the camera toward himself and stated, "We just went ahead and stormed the Capitol!" Ms. Balmaseda was near Mr. Garcia as he recorded the video. [Id.at 16].

The mob eventually overran the police line and proceeded into the Crypt. [Id. at 17]. Ms. Balmaseda moved forward, joined a crowd of rioters, and headed towards an area known as the "OAP Corridor," where another line of officers initially blocked a hallway. [Id.]. The officers eventually backed away, and the rioters, including Ms. Balmaseda, continued to move forward. [Id.].

Ms. Balmaseda went to the second floor and entered the Rotunda, where she took photographs. [Id. at 18]. Ms. Balmaseda remained in the Rotunda and stood nearby as a group of rioters attempted to push through an officer line. [Id. at 19]. At approximately 3:11 p.m., law enforcement officers received additional support in the Rotunda and were able to corral rioters, Ms. Balmaseda included, towards the nearest exit, the Rotunda doors. Ms. Balmaseda remained in the Capitol building for about an hour. [Id. at 20].

In June 2024, Ms. Balmaseda was charged with violating 18 U.S.C. § 1512(c)(2)- Obstruction of an Official Proceeding; 18 U.S.C. §1752(a)(1)- Entering and Remaining in a Restricted Building or Grounds, and (2)- Disorderly and Disruptive Conduct in a Restricted building or Grounds; 40 U.S.C. § 5104(e)(2)(D)- Disorderly Conduct in a Capitol Building, and (G)- Parading, Demonstrating, or Picketing in a Capitol Building for allegations arising out of conduct on January 6, 2021.

At the initial appearance in this District on December 21, 2023, Magistrate Judge Zia M. Faruqi ordered that Ms. Balmaseda be released on conditions, including a requirement that the Court approve all travel outside of the Continental United States. [ECF No. 11]. Now Ms. Balmaseda seeks to modify her pre-trial release conditions to allow her to travel from Miami to Barcelona on August 29, 2024 and returning from Rome, Italy to Miami, Florida on September 13, 2024 for her honeymoon. [ECF No. 28].

**ARGUMENT**

I. **Applicable Authority**

Under the Bail Reform Act, if a judicial officer determines that release under two standard conditions (not committing crimes and cooperating in the collection of DNA) "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community," the judicial officer may impose additional conditions. 18 U.S.C. §§ 3142(b), (c)(1). In that event, the judicial officer shall release the defendant "subject to the least restrictive further condition, or combination of conditions" that "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B).  These conditions may include the condition that the person "abide by specified restrictions on…travel." 18 U.S.C. § 3142(c)(1)(B)(iv).  The Court is authorized to impose "any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community."  18 U.S.C. § 3142(c)(1)(B)(xiv).

In determining appropriate conditions of release, the judicial officer considers factors including: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence"; (3) "the history and characteristics" of the defendant and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g) ("Section 3142(g) factors").  The judicial officer may amend a release order "at any time." 18 U.S.C. § 3142(c)(3).

II. **The Court Should Not Modify Ms. Balmaseda's Conditions of Release**

The Court should deny Ms. Balmaseda's motion to travel because she is already subject to the "least restrictive" combination of conditions necessary to ensure the safety of the community. 18 U.S.C. § 3142(c)(1)(B). Ms. Balmaseda was not required to post bond, and is not subject to

home detention, a curfew, or GPS monitoring; instead, she must submit to supervision by Pretrial Services, and cannot possess firearms. [ECF Nos. 10 and 11]. Together with these relatively limited conditions, the passport and travel restrictions create the least restrictive combination of conditions required to mitigate the danger that she poses to the community.

Ms. Balmaseda international trip presents a concerning risk of flight. Thus, Section 3142(g) factors including the passport restriction are appropriate to Ms. Balmaseda's conditions of release.

> International travel restrictions are imposed due to the simple fact that once the defendant leaves the United States, the District Court, the Pretrial Services Agency, and U.S. law enforcement lose jurisdiction over him. If a defendant in the United States removes his GPS bracelet or travels beyond his permitted boundaries, the Pretrial Services Agency can send its officers, U.S. marshals, or local law-enforcement to search for and detain him. Those options are not available if the defendant takes those actions while traveling in a foreign country.

*United States v. Irizarry*, No. 22-3028, 2022 WL 2284298, at *2 (D.C. Cir. June 24, 2022) (Wilkins, J., dissenting). Applying the 3142(g) factors to this case, this Court should deny Ms. Balmaseda's motion to travel.

The nature and circumstances of Ms. Balmaseda's offenses support restricting her ability to travel internationally before trial. Although Ms. Balmaseda is currently charged with one felony[2] and four misdemeanors and the Government is not aware of evidence that Ms. Balmaseda assaulted officers, her conduct on January 6, 2021 is serious. Ms. Balmaseda climbed on the balustrades of the Capitol building to get closer to the building entrance, joined rioters in breaching the Capitol building, continued to permeate the building after being stopped multiple times by law

---

[2] The Government's position is the same even if the Supreme Court's decision in *Fischer v. United States*, No. 23-5572 ultimately affects the charges in this case. The nature and circumstances of Ms. Balmaseda's conduct and flight risk, no matter the charges, weigh in favor of denying Ms. Balmaseda's motion to travel.

enforcement officers, and did not leave the building until law enforcement officers forced her out. As Congress met in the Capitol building, Ms. Balmaseda breached the building, going through multiple areas and floors of the building. Ms. Balmaseda is already subject to the "least restrictive" combination of conditions and given her willful intent to join a violent attack on the Capitol, her conduct does warrant international travel restrictions.

Moreover, the evidence against Ms. Balmaseda—which includes surveillance footage, third party group chats, and open-source videos—is very strong. Her approximately one hour inside the Capitol Building was captured on CCTV and open-source footage. This evidence could have an impact on Ms. Balmaseda's risk of flight.

Although Ms. Balmaseda has complied with her release conditions so far, the Government has concerns about travel outside of the United States, where the Government would have no recourse if she were to violate her conditions or fail to return. The Government's concern is not diminished by the fact that Ms. Balmaseda's international trip is for the purpose of going on her honeymoon. The Government is concerned about the duration and expansive nature of the trip. Based on information provided to the Government by the Defense, Ms. Balmaseda will be traveling internationally for two weeks over the span of seven cities, and three countries. The flexibility to arrange international travel and the breadth of international travel raises concerns of flight, especially given the Government's lack of recourse if Ms. Balmaseda failed to return.

Ms. Balmaseda's travel is also nonessential. There is no evidence that Ms. Balmaseda can't have her honeymoon in the United States within the same time frame. The Government acknowledges that Ms. Balmaseda's honeymoon abroad would be a nice trip to celebrate her marriage, but that does not mitigate the severity of Ms. Balmaseda's actions before, on, and after January 6, 2021 and the interest in having recourse if Ms. Balmaseda violates her conditions. *See*

*e.g.*, *United States v. Sarty*, 1:24-cr-00130-CKK, ECF No. 29 (denying defendant's request to travel to Greece for a family trip that was planned and paid for before his arrest); *United States v. Orlando*, 1:24-cr-40-CKK, ECF No. 20 (denying defendant's request to study abroad for a week in Cyprus); *United States v. Williams*, 21-cr-00377-BAH, Minute Order, January 7, 2022(denying the defendant's request for travel to Jamaica).

Defendant's pre-trial release conditions must "reasonably assure [her] appearance" in this case. 18 U.S.C. § 3142(c)(1)(B). Here, in assessing the nature of Ms. Balmaseda's offenses, and the flexibility and breadth of the international trip, Ms. Balmaseda's travel raises concerns of flight because of the Government's lack of recourse should Ms. Balamseda violate her pre-trial conditions during this international trip. Ms. Balmaseda's "international travel . . . will need to wait until [s]he is no longer facing [] charges arising from h[er] ill-advised domestic travel in January 2021." *United States v. Owens*, 21-cr-00296, May 23, 2022 Minute Order; *see also United States v. Williams*, 21-cr-00377-BAH, Minute Order, January 7, 2022(denying the defendant's request for non-essential foreign travel to Jamaica noting that the defendant "surrendered his entitlement to unfettered international travel" when he joined the riot on January 6, 2021).

## CONCLUSION

For the foregoing reasons, Ms. Balmaseda's motion to travel should be denied.

Respectfully submitted,

Matthew M. Graves
United States Attorney
D.C. Bar No. 481052

By:   /s/ *Taylor L. Fontan*
Taylor L. Fontan
IN Bar No. 35690-53
Assistant United States Attorney
601 D Street NW

7

Washington, D.C. 20001  
(202) 815-8597  
Taylor.fontan@usdoj.gov